IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WALTER-EL ALKEMET SHAKUR EL-BEY, ) ) ) Plaintiff, ) ) v. ) ) ) ALFONZA MENEFEE, *et al.*, ) ) Defendants. ) | CIVIL ACT. NO. 3:14-CV-47-WKW (WO) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant Alfonza Menefee's motion to dismiss for lack of jurisdiction. (Doc. 42). Having considered the motion, the court concludes that the motion is due to be denied.

**I.    Standard of Review**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Therefore, a federal court is obligated to inquire into subject matter jurisdiction sua sponte "at the earliest possible stage in the proceedings." *Id.* at 410. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II.  Discussion

### A.  Facts and Procedural History

On December 6, 2013[1], Walter Earl Topps ("EL-Bey") took a completed, signed, notarized petition to change his name to the Macon County Courthouse. (Doc. 1 ¶ 40; Doc. 40-1 p. 36; Doc. 42-1 ¶ 3). He wanted to legally change his name to Walter-El Alkemet Shakur EL-Bey (Doc. 40-1 p. 36), which is the name he uses as the *pro se* plaintiff in this lawsuit.

As his reason for requesting the change, EL-Bey stated on his petition: "the name that I was given at birth does not adequately reflect the man that I have grown to be and the identity that I wish to presume [sic] based on culture and heritage." (Doc. 40-1 p. 36). More specifically, EL-Bey desired to change his name because he considers himself to be a "Moor and a sovereign citizen." (Doc. 1-1 p. 1; *see also* Doc. 37; Doc. 51 p. 2). EL-Bey subscribes to the idea, often presented in the legal arena as a form of "sovereign citizen" ideology, that he is a member of an indigenous people group called the "Moors" or "Moabites" which inhabited North America prior to its colonization. (Doc. 37). Those who consider

---

[1]In his original complaint, EL-Bey stated that the incident occurred on "06 12 13," (Doc. 1 p. 1), which the court interpreted as June 12, 2013.  In his amended complaint, EL-Bey states that "06 12 13 was meant to be read as day, month, year, and not to be construed as June 12 2013." (Doc. 40 ¶ 6).

themselves "Moors" in this sense are members of a religion heavily-influenced by Islam founded by a person from North Carolina who they believe is a recent-day prophet of Allah.[2] *U.S. v. James*, 328 F.3d 953, 954 (7th Cir. 2003) ("Moorish Science is a heterodox Islamic sect based on teachings of Drew and his 'Seven Circle Koran.'"); *Johnson-Bey v. Lane*, 863 F.2d 1308, 1309 (7th Cir. 1988) (Posner, J.) (referring to the primary organization of "Moors," the Moorish Science Temple, as a "black Islamic sect" and explaining that Moors "have their own version of the Koran and a list of prophets that includes, in addition to the prophets recognized by orthodox Islam, Buddha, Confucius, and the founder (in 1913) of the Moorish Science Temple, Prophet Noble Drew Ali"). "That it is a bona fide religion is not questioned." *Johnson-Bey*, 863 F.2d at 1309.

"It is a tenet of Moorish Science that any adherent may adopt any title, and issue any documents, he pleases." *James*, 328 F.3d at 954. Moors commonly call themselves by names such as "Ali, El, Dey, Bey," and "Al," which they consider to be their rightful "titles." (Doc. 37). "'El' and 'Bey' refer to the African tribes from which the Moors believe black people are descended." *Johnson-Bey*, 863 F.2d at 1309.

When EL-Bey presented his petition to legally change his name, Macon County Probate Judge Alfonza Menefee attempted to speak to him about that petition. (Doc. 42-1 ¶¶ 5-10). Specifically, although EL-Bey had not yet filed the petition, Judge Menefee spoke to him regarding his reason for requesting a name change as part of his usual "practice [of]

---

[2]*See* http://www.moorishsciencetempleofamericainc.com/MoorishHistory.html.

review[ing] petitions for a name change" by "personally speaking to petitioners regarding the reason they are seeking to change their name." (Doc. 42-1 ¶¶ 5-6). EL-Bey alleges that, during this discussion, Judge Menefee questioned him about his religion, made remarks about Christianity, told EL-Bey he needed to take the petition "to a pastor,"[3] threw the petition and other documents at EL-Bey, and instructed the clerk not to file the petition. (Doc. 40 ¶¶ 6-8). In his affidavit presenting his account of what happened when EL-Bey attempted to file his petition, Judge Menefee does not deny or contradict EL-Bey's allegations regarding the religious nature of this discussion.[4] Moreover, the court notes that EL-Bey's religion necessarily would have been the subject of any discussion of EL-Bey's reasons for seeking a name change.

Judge Menefee states that, as a result of this discussion, EL-Bey "reacted with hostility towards me and began shouting at me that I was violating his constitutional rights." (Doc. 42-1 ¶ 7). Although Judge Menefee does not identify any "aggressive" or "irrational"

---

[3]Because the basis upon which Judge Menefee allegedly refused to allow EL-Bey to file his request for a name change and called police was not clear from the face of EL-Bey's original complaint, the court held a status conference on February 28, 2014 to determine if EL-Bey could allege additional facts to sufficient state a claim against Judge Menefee. At the status conference, EL-Bey alleged that Judge Menefee did not allow him to file a request to change his name because EL-Bey was a member of a religion with which Judge Menefee did not agree. Specifically, according to EL-Bey, Judge Menefee commented on EL-Bey's religion when refusing to allow him to file the request. EL-Bey asked, "Why are you bringing my religion into this?" Judge Menefee replied, "I don't want to see this [form]. Take it to the pastor." EL-Bey was subsequently given leave to amend his complaint to state with particularity the facts supporting his claim that, on the basis of his religion, Judge Menefee refused to allow him to file a petition to change his name. (Doc. 30; Doc. 38).

[4]Judge Menefee does state that he "did not deny [EL-Bey's] petition for a name change based on his religious preference" "specifically" because he "did not deny [EL-Bey's] petition at all." (Doc. 42-1 ¶¶ 14-15). It is undisputed that Judge Menefee never *denied* the petition based on religion or for any other reason because the petition was never filed.

behavior other than shouting, Judge Menefee states that, after attempting to speak with EL-Bey to "calm him down," he became concerned for his safety and the safety of his staff due to EL-Bey's "aggressive" and "irrational behavior," and he called courthouse security to escort EL-Bey from the courthouse. (Doc. 42-1 ¶¶ 10-11). According to EL-Bey, however, after Judge Menefee refused to allow him to file his petition to change his name, and prior to Judge Menefee calling security, he was "seated attempting to present supporting documents and questioning the constitutionality of the abuse of power and color of authority displayed by [Judge Menefee]" while "behav[ing] with proper conduct in the administration of personal business." (Doc. 51 p. 3).

Judge Menefee contends that EL-Bey did not return to the building or attempt to file his petition after he was initially escorted from the building. (Doc. 42-1 ¶ 12-13). According to EL-Bey, however, after being escorted from the courthouse by security, he later returned with a sheriff's deputy and requested again to be allowed to file a petition to change his name, but Judge Menefee again refused to allow him to file the petition. (Doc. 51-1 p. 2; *see also* Doc. 1-1 p. 1). EL-Bey contends that he was arrested by local police after leaving the courthouse again, and, during the arrest, he was told to "put [his] hands behind [his] back "like you pray, you know how you pray?" (Doc. 1-1 p. 2).

On January 21, 2014, EL-Bey filed a complaint against Judge Menefee.[5] (Doc. 1).

---

[5] EL-Bey also filed claims against Tuskegee University which arise out of a separate event that occurred on a different day on the Tuskegee University campus; those claims are not relevant to this Recommendation.

On August 1, 2014, EL-Bey filed an amended complaint. (Doc. 40). In his amended complaint, EL-Bey alleged the following against Judge Menefee:

> 6. On the 6th day of December 2013 Mr. EL-Bey did visit the Macon County probate court to file a petition for a name change. . . .
>
> 7. On 6 December 2013 Alfonza Menefee did; interfered with the notarization of a petition for a name change, made inflammatory remarks concerning Christian religious alignment "take this to your pastor," and refused to allow the court clerk to file the request for a name change.
>
> 8. On 6 December 2013 Alfonza Menefee did willfully reject his oath to the United States Constitution verbally by replying "no" when Mr. EL-Bey asked him if he took an oath of office. Alfonza Menefee did physically assaulted Mr. EL-Bey by tossing forms consisting of a petition for name change, Resolution 75, and the U.N. Declaration of Rights of Indigenous Peoples in the face of a seated Mr. EL-Bey.
>
> 9. On 6 December 2013 Alfonza Menefee did subject Mr. EL-Bey to terrorism by instigating aggressive police presence in the area of the Probate Court. Theodore "Ted" Britt did force Mr. EL-Bey from the court house where he was accosted by three unidentified armed persons whom where previously in conference with Alfonza Menefee on the third floor of the Macon County Courthouse.

(Doc. 40 ¶¶ 6-9 (sic)).

EL-Bey seeks monetary damages against Judge Menefee, but does not seek injunctive or declaratory relief. (Doc. 40 p. 5).

On August 14, 2014, Judge Menefee filed a motion to dismiss the claims against him for lack of jurisdiction, (Doc. 42), to which EL-Bey has filed a response (Doc 51). Judge Menefee argues that the court lacks jurisdiction over the claims against him because those claims are not ripe or, alternatively, because those claims are moot. The court will discuss

each of these arguments in turn.

**B.     Ripeness**

It is undisputed that EL-Bey never filed the petition to change his name and that Judge Menefee in fact never denied the petition because it was never properly before him. In fact, Judge Menefee never had jurisdiction to rule on the petition because it had not been filed. Ala. Code § 12-13-1(b)(10) ("The probate court shall have original jurisdiction over . . . [t]he change of the name of any person residing in their county, *upon his filing* a declaration in writing, signed by him, stating the name by which he is known and the name to which he wishes it to be changed." (emphasis added)).  Therefore, Judge Menefee argues that EL-Bey's claims against him are not ripe because he has not entered a final ruling on the petition. In support of his argument, Judge Menfee cites *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803 (2003), in which the Supreme Court stated

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

538 U.S. at 807-08 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Judge Menefee fundamentally misunderstands the nature of this action.  EL-Bey is not challenging a judicial decision to deny a petition to change his name. Federal district courts are not appellate courts, and the Supreme Court alone is the only federal court with

jurisdiction to reverse or modify a state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 280 (2005). Moreover, with certain exceptions, Judge Menefee is judicially immune from actions seeking damages for acts taken in his judicial capacity, *Mireles v. Waco*, 502 U.S. 9, 11 (1991), such as the denial[6] of a properly-filed petition for a name change.

In this case, EL-Bey is suing Judge Menefee for taking a proverbial stand in the courthouse door – allegedly on the basis of a personal disagreement with EL-Bey's religion – to prevent him from filing the petition in the first place. Specifically, EL-Bey claims that,

---

[6]While the *denial* of a duly-filed petition for a name change would most certainly be a judicial act from which Judge Menefee would be immune, Judge Menefee has not a raised the defense of judicial immunity, and the issue of judicial immunity has not been briefed. It is not clear at this stage of the proceedings that judicial immunity applies to a claim against Judge Menefee for preventing EL-Bey from *filing* the petition on the basis of his religion. A judge is not immune from claims against them for their non-judicial actions (such as actions taken in a ministerial, administrative, executive capacity) or for actions taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 11. A probate judge does not have jurisdiction to review and reject the religious motivations behind a petition for a name change "off the record" and outside the bounds of judicial review before it is filed, or to prevent the *filing* of the petition on grounds that the petition is substantively without merit or contrary to the probate judge's religious beliefs. *See* Ala. Code § 12-13-1(b)(10) (stating that a probate judge's jurisdiction to act on a petition for a name change attaches "upon [the] filing" of the petition); *see also Russell v. Fuqua,* ___ So.3d ___, 2014 WL 1874651 (Ala. May 9, 2014) ("The jurisdiction of our probate courts ' "is limited to the matters submitted to [them] by statute." ' *AltaPointe Health Sys., Inc. v. Davis*, 90 So. 3d 139, 154 (Ala. 2012) (quoting *Wallace v. State*, 507 So. 2d 466, 468 (Ala. 1987).");  *Lappan v. Lovette*, 577 So. 2d 893, 896 (Ala. 1991) ("The probate court cannot take jurisdiction of a cause or administer remedies except as provided by statute."). Judge Menefee has submitted an opinion of the Alabama Attorney General in support of his assertion that he may properly inquire about the basis of a petition for a name change and deny the petition on the basis of fraud, misrepresentation, attempt to hide criminal activity, or interference with the rights of others. That opinion, however, does *not* support the proposition that a probate judge may review the merits of a petition as a basis for preventing the petitioner from *filing* it; rather, that opinion explains the narrow reasons for which a petition may be *denied* after it is filed. *In re Honorable Time Russell*, Ala. Op. Atty. Gen. No. 2011-046. Incidentally, the opinion also makes clear that justifiable grounds for denying a properly-filed petition do not include the probate judge's personal moral or religious disapproval of the petitioner's motivations. *Id*. (responding to a probate judge's inquiry as to whether he must grant a petition when he is "concerned because [the] name change is a predicate for the subsequent completion of a gender change").

on December 6, 2013, after discovering and objecting to the religious basis of EL-Bey's petition and while acting under color of state law, Judge Menefee deprived him of his constitutional rights to due process, equal protection, and the free exercise of religion by instructing the clerk not to file the petition, by having EL-Bey physically removed from the courthouse, and by refusing to allow him to file the petition when he returned to the courthouse with a sheriff's deputy. Therefore, EL-Bey's claim against Judge Menefee does not concern some future event or the hypothetical future denial of a properly-filed petition; rather, his claims against Judge Menefee concern concrete events which have already occurred and are ripe for adjudication. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1239-40 (11th Cir. 2010) ("'A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *Matter of Munford, Inc.*, 97 F.3d 449, 454 (11th Cir. 1996) ("[A] claim is ripe for adjudication . . . when 'the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.' *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1212 (11th Cir. 1995).").

**B.    Mootness**

Judge Menefee argues that EL-Bey's claims are moot on grounds that EL-Bey currently calls himself "Walter-El Alkemet Shakur EL-Bey," even though he was never allowed to file a petition to legally change his name. Therefore, according to Judge Menefee, this case is moot because it does not concern a "live controversy." *See Soliman v. United*

*States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (holding that the plaintiff's request for injunctive relief from being force-fed while held by Immigration and Naturalization Services was moot because the case longer presented "an active case or controversy" after the plaintiff was released).

This argument lacks merit. EL-Bey does not seek a decision from this court about whether he may call himself "Walter-El Alkemet Shakur EL-Bey" or any other name, legally, informally, or otherwise, and he does not seek prospective injunctive relief against Judge Menefee. EL-Bey seeks monetary damages from Judge Menefee for claims arising from a discreet incident that occurred on December 13, 2013, when Judge Menefee prevented EL-Bey from filing a petition to change his name, allegedly on the basis of EL-Bey's religion. EL-Bey's subsequent decision to use an alias does not have any conceivable bearing on whether the claims against Judge Menefee present a live controversy.

### III. Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that the motion to dismiss (Doc. 42) filed by Judge Menefee be **DENIED**. It is further

**ORDERED** that the parties shall file any objections to the said Recommendation on or before **October 28, 2014.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 14th day of October, 2014.

                        /s/Charles S. Coody
                        CHARLES S. COODY
                        UNITED STATES MAGISTRATE JUDGE